L67nreys

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                     20 Cr. 396 (NRB)

TRACY REYNOLDS,


           Defendant.

                                Sentence
------------------------------x

                                New York, N.Y.
                                June 7, 2021
                                12:10 p.m.


Before:

                 HON. NAOMI REICE BUCHWALD,

                                District Judge

           APPEARANCES (Via Microsoft Teams)

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  MICHAEL R. HERMAN
     Assistant United States Attorney

MARANDA E. FRITZ
     Attorney for Defendant

L67nreys

1          THE COURT:  This is the matter of United States of

2     America v. Tracy Reynolds, 20 Cr. 396.

3          Let's start in the traditional way of taking

4     attendance.

5          First who is on the phone for the government, please.

6          MR. HERMAN:  Yes.  Good afternoon, your Honor.  It's

7     Michael Herman for the government.

8          THE COURT:  Okay.  And who is on the phone for the

9     defendant?

10          MS. FRITZ:  Ms. Reynolds is here.  You have Maranda

11     Fritz, representing Ms. Reynolds.  We have nobody on the phone

12     line.

13          THE COURT:  Okay.  And I see that Sam Mauro is our

14     court reporter today, is that correct?

15          THE COURT REPORTER:  Yes.  Good afternoon, your Honor.

16          THE COURT:  Okay.  Thank you.  I see my law clerk, and

17     a few other face-like pictures.

18          So just who else is on the phone, please?

19          MR. HERMAN:  Your Honor, this is Michael Herman, for

20     the government.  There may be on the phone some agents who

21     investigated this case, as well as there may be a number of

22     interns from our office.

23          THE COURT:  All right.

24          To cover some preliminary matters or further

25     preliminary matters, first, I have received a written consent

L67nreys

1    to proceed today by videoconference, which we did earlier for

2    Ms. Reynolds' plea.

3          Let me confirm nonetheless with Ms. Reynolds that you

4    consent to proceed today by videoconference rather than

5    in-person.

6          THE DEFENDANT:  Yes, your Honor.  Thank you.

7          THE COURT:  Okay.

8          And you discussed your options, I presume, with

9    Ms. Fritz in advance of this sentencing proceeding.

10         Is that correct?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Okay.  Let me say that I have concluded

13   that this sentence should not be further delayed without

14   serious harm to the interests of justice.

15         Okay.  Let's return to the more traditional aspects of

16   the sentence.

17         First let me confirm that I have received all the

18   documents that I should have in connection with the sentence.

19         First, there was the pretrial services report that was

20   dated April 27, 2021; the defendant's sentencing submission

21   that was filed on May 28 of this year; and, finally, the

22   government's sentencing submission which was filed on June 2,

23   2021.

24         Were there any other documents that I should have

25   received in connection with the sentence, with the

L67nreys

1    understanding that when I reference the sentencing submissions

2    I'm including any exhibits that were attached to them?

3              MR. HERMAN:  Not from the government, your Honor.

4              MS. FRITZ:  No.

5              THE COURT:  Were there any other documents I should

6    have received?

7              MS. FRITZ:  No, your Honor.

8              THE COURT:  All right.

9              And let me confirm that both parties have received a

10   copy of the presentence report and that, Ms. Fritz, you had the

11   opportunity to review it with your client.

12             MS. FRITZ:  Yes, I did.

13             The addendum to the report reflects various comments

14   and objections that were made by the defense, and, yes, that

15   was based on my review and my review with the client.

16             THE COURT:  And do I assume that any objections you

17   had to the report are reflected in the comments that are

18   reflected in the report?

19             MS. FRITZ:  Yes, they are.  Thank you, your Honor.

20             THE COURT:  Mr. Herman, does the government have any

21   objections to the report?

22             MR. HERMAN:  No, your Honor.

23             THE COURT:  All right.

24             Ms. Fritz, let me give you the floor.

25             MS. FRITZ:  Thank you.  Thank you, your Honor.

L67nreys

1      Having read so many cases, as many as I could find I

2  should say over the last few days, I just wanted to begin by

3  talking a little bit about what this case isn't.

4      I reviewed some cases in order to understand better

5  what sentences have been imposed in these kinds of cases, and I

6  have to say it's very hard to find cases that are similar.

7      I reviewed cases, even one that your Honor handled,

8  that have similar charges, but the cases are completely

9  different.  So I wanted to begin by emphasizing this is not a

10  case where there is forced conduct.  This is not a trafficking

11  case.  This is not a case where there's gangs or violence.  And

12  it certainly is not a case where there were any minors

13  involved.

14      This is a very different kind of case.  This is a

15  high-end escort service.  As Mr. Herman emphasized, the women

16  were charging $700 to $1,000 an hour, so an arrangement with a

17  man could cost thousands of dollars.

18      That's what we're dealing with here.  We are not

19  dealing with victims.  That is something that the PSR

20  emphasizes.  We are not dealing with victims or minors.

21      So what we have, even in terms of the guidelines, is a

22  beginning point of a 13, a level 13.  That then brings us to

23  what is really the only analytical issue that's disputed

24  between the government and me, and that is what, if any,

25  enhancements should be applied to that level 13 based on

L67nreys

1    Tracy's role in these activities.

2              So, in my papers, and I understand that your Honor has

3    reviewed them, we have gone through what we think is the

4    correct analysis.

5              We've gone through, first, the issue of whether there

6    are five or more participants.  Now here we know that there's

7    two individuals who were charged.  We also know that there's

8    references both by the government and by probation to

9    Ms. Reynolds' sister.  So we know that we are talking about two

10   or three individuals who even arguably would constitute

11   participants within the meaning of the provision.  So I think

12   that's undisputed.  We are talking about two or three

13   participants.

14             Well, that then shifts the analysis.

15             And so the government goes to, well, is it otherwise

16   extensive?

17             And so I've taken a look at the case law.  And we have

18   the *Carrozzella* case that talks about the fact that when you

19   are talking about otherwise extensive -- and I thought this was

20   interesting language -- it's not about extensiveness in the

21   colloquial sense.  It is about the number of people that are

22   organized or led in the criminal enterprise.

23             So what you are looking for is, was this a significant

24   criminal enterprise?  I would argue that saying that this

25   conduct that we are seeing here as presented to the Court, I

L67nreys

1    would argue that suggesting that that is otherwise extensive

2    actually sort of minimizes what we know to be conduct that is

3    extensive.

4         I would argue that, to the contrary, this has not been

5    proven to be otherwise extensive.  And I notice that when we

6    look at the factors that are relied upon in the PSR or by the

7    government, in both instances the argument for why it's

8    otherwise extensive is being made based primarily on a monetary

9    figure that's involved.

10        And that, again, is something that the *Carrozzella*

11   case says is not the issue.  When you are looking to whether a

12   criminal enterprise is otherwise extensive, according to that

13   case, you don't focus on the amount at issue.  Again, you focus

14   on whether this is a significant criminal organization in terms

15   of its size.

16        So on that issue I still come away maintaining that

17   here there are not five or more participants.  I think the

18   evidence presented by the government does not establish that it

19   is otherwise extensive, and so I would argue that what we have

20   here is something that falls into the 3B1.1(c) category.

21        Separate and apart from the number of participants or

22   otherwise extensive, the Court has to take a look at the issue

23   of what Ms. Reynolds' role was.  And I think, looking at the

24   paperwork, both probation's and the government's submission, I

25   maintain that it's clear that this operation, this enterprise

L67nreys

was started and directed and established by Mr. Cohen, not

Ms. Reynolds, that she was not an instigator in this.  She was

not a leader in this.

          In fact, I would argue, while Mr. Herman would argue

that she is an organizer or leader, I would maintain she was

led, that this is the classic example of somebody who is being

led and directed who then serves as -- and, yes, I agree -- as

a manager.  So in my view she falls squarely within that

definition of managing.

          Those are the issues, the legal issues, with respect

to the guideline analysis.

          I do believe that we start with a 13, and that the

two-level increase under 3B1.1(c) would be the increase that

would be appropriate in terms of role.

          Putting that aside, though, and perhaps far more

important, whether it's level 15 or not, this Court has every

option before it in terms of what an appropriate sentence is.

          We have seen in the last couple of years, both through

the First Step Act as well as the CARES Act, we've seen a real

emphasis on alternatives to incarceration for those individuals

who don't pose a risk to the community or a danger of

recidivism, and that I would argue is exactly what we have

here, even according to the PSR.

          So that's where we are in terms of a traditional

analysis.  But what probation didn't take into account, even

L67nreys

1  though probation obviously recommends a nonguidelines sentence,

2  what they didn't take into account is the fact that this is a

3  case where, from the outset, Tracy sought to cooperate.  She

4  waived indictment.  She pled guilty.

5          She went through proffer sessions with the government,

6  but this happens to be a case where the lead defendant is not

7  available to the government.  They don't know when they are

8  going to end up trying that case.  They don't know when they

9  are going to be able to obtain his extradition.

10          So, for those and other reasons, ultimately

11  Ms. Reynolds did not receive a cooperation agreement, but I

12  believe Mr. Herman agrees that when she came in, when she spoke

13  to them, she was forthcoming, and she made every effort to

14  cooperate.  So that's a fact that I think the Court should

15  weigh in terms of evaluating what the appropriate sentence

16  would be.

17          On that point, by the way, I have to correct something

18  that I said in the sentencing memo.  Ms. Reynolds was actually

19  arrested without there being any communication with counsel.

20  So there had been no opportunity for any preindictment

21  resolution or discussion.

22          She was actually arrested on her way to a music

23  convention, a group of individuals that she would meet with or

24  travel with every year in order to study certain singing and

25  vocal techniques.

L67nreys

1    She was arrested at the Tampa airport.  At one point

2    in my submission I said she was arrested in Colorado, and that

3    was an error.  She was on her way to a convention.

4    But after that arrest, as soon as she and I began

5    dealing with one another, we began working through to speak to

6    Mr. Herman, again to waive indictment, to plead guilty, and to

7    cooperate.

8    So I think all of those are significant things that

9    factor into this.

10    Okay.  But, for more important than any of that, your

11    Honor, far more important than any of that is Tracy.  You've

12    seen from the probation report -- I would argue that the report

13    really reflects the fact that, even under the current

14    circumstances of COVID, where there's very little contact that

15    occurs between the people that are involved, the probation

16    report reflects that they were somehow impressed with her.

17    They go on at some length, the mitigating factors in

18    this case outweigh the aggravating factors; that she has been

19    compliant under supervision and will present no issue; that the

20    risk of this defendant rescidivating is low; that she currently

21    has strong familial support from family and from her boyfriend

22    of 22 years; that she does not pose any danger to the

23    community.  So all of those are basic things that even the PSR

24    is putting forth for your Honor.

25    But beyond that, way beyond that, I would like to

L67nreys

1    think that the letters that your Honor received either

2    individually or even more so collectively really present an

3    amazingly consistent picture of who Tracy Reynolds really is.

4          Over and over in these letters you see the same points

5    being made by the individuals that have known her.  You see how

6    dedicated she's been to her family, the way that she always

7    helped her grandparents, the way that she helped her sister and

8    is still -- still -- working to do whatever she can with her

9    niece.

10          Over and over again she's called hard working and

11    diligent, dedicated.  One of the individuals at the end talks

12    about the fact, I thank God that Tracy entered my life.  One

13    person after another talks about the kindness and the warmth

14    and the generosity that is Tracy Reynolds.

15          In addition to that, what I would ask your Honor to

16    focus on is the fact that not only does Tracy feel incredible

17    regret and remorse over all of this activity now, I would ask

18    your Honor to remember that Tracy was regretful of her

19    involvement with Cohen even while this was occurring.

20          Now, I've tried to present a picture of the fact that

21    Tracy came to New York as a young woman on her own and that she

22    ended up working in what was advertised as a marketing

23    position, and that, yes, slowly but surely Mr. Cohen had Tracy

24    handling bookings and appointments, dealing with things like

25    that.

L67nreys

1          But I would emphasize that in 2006 Tracy herself

2    walked away from this and moved back to Colorado.  She wanted

3    not to have anything more to do with him.  And so for five

4    years Tracy went on about her business to live her life the way

5    Tracy would live her life had she not been led or misled I

6    would argue.

7          So then we get to the point in 2011 where he contacts

8    her again.  Yes, Tracy gets involved again and agrees to

9    operate the business and manage the business.  But I would

10   emphasize, after going through some incredibly difficult

11   personal losses in 2017 and 2018, Tracy made her decision to be

12   done with him.  And in September '19 -- and it's borne out by

13   the government's submission -- Tracy ceased her involvement

14   with limit.

15         Now, this is months before there was any arrest.

16   Tracy Reynolds had no earthly idea that there -- I don't know

17   if there was an investigation at that point, but certainly she

18   certainly had no knowledge of any.

19         This was a personal decision that she had made.  Had

20   there not been an arrest the following February, Tracy would

21   have simply lived her life having nothing more to do with him.

22         So, while she made a great many, great many mistakes

23   and very poor decisions being involved with him, she brought

24   herself back to getting away from it before there was any

25   arrest.

L67nreys

1      She explains to the Court in her letter that she has

2  deep remorse about what happened; that she regrets very much

3  what occurred, but that she also has tried incredibly hard

4  since the arrest to put together a productive life.

5      This is a gal that has worked two or three jobs at a

6  time to support herself.  Within the last couple of months, she

7  actually got a new job that's involved with search engine

8  optimization for a company.

9      As we pointed out in the documents, she applied for

10  and she was accepted to a program that will allow Tracy to use

11  her music in a healing way in order to deal with individuals

12  who are in hospice care.

13      Having gone through that last year with my father, in

14  hospice care any kind of love and gentleness and kindness that

15  can possibly be shown under those circumstances is sorely,

16  sorely needed.

17      In terms of the purposes of sentencing and what

18  Mr. Herman says is necessary, certainly no incarceration is

19  needed in order to deter Tracy Reynolds.  Tracy has been

20  terrified throughout this process and desperately wants only to

21  be able to continue to live a good life, contribute to her

22  community.  That's all that she wants in the world.  So that's

23  not necessary.

24      In order to punish, just purely to punish, well, this

25  is an odd offense, and obviously it is serious and heaven knows

L67nreys

1    we take it seriously.

2              But I would point out I was struck by an article that

3    came out in March where thousands of cases that involve

4    loitering for prostitution, prostitution-related activity, have

5    been dismissed:  5,000 cases by the Manhattan DA, 262 by the

6    Brooklyn DA, another 670 by the Queens DA.

7              This is an unusual offense, particularly here, where

8    there are no victims involved in the activity.  Heaven knows

9    she has been punished and terrified.  But if the Court were to

10   impose incarceration, I want to emphasize, not only would Tracy

11   lose her livelihood and end up back at square one, but also

12   there is no facility in that area, there is not a single one

13   that could house Tracy.

14             The closest facility is 617 miles away, nine hours by

15   car.  She would have no ability to maintain the support and the

16   relationships with her family, with her friends, with her

17   significant other of 20 years.  She would be nine hours away at

18   best.

19             And she does also have a diagnosis of diabetes.  So,

20   do we worry about what the conditions will be?  Sure we do.

21   And under recent issuance, including the CARES Act, Bureau of

22   Prisons was encouraged to consider home confinement -- again,

23   for circumstances that are exactly like this, where there's no

24   danger of recidivism and no danger to the community.

25             So that is what we're asking the Court to do.  The

L67nreys

1    Court has all of the options of time served, of home

2    confinement with a departure to a zone B, and we would ask that

3    the Court allow Tracy to go and continue on a good path that

4    she has been working hard to build and to maintain since the

5    arrest in this case.

6            If, on the other hand, the Court were to impose

7    incarceration, I would ask that Tracy be given a period of at

8    least 30 days in order to self-surrender.

9            And I thank you.  I thank you for all your

10   consideration, Judge, throughout the proceedings.

11           THE COURT:  What is the facility that you say is the

12   only appropriate one remotely close to her home?

13           MS. FRITZ:  There is a close facility called FCI

14   Englewood.  It's for men only.

15           THE COURT:  Okay.  That doesn't work.

16           MS. FRITZ:  FCI Phoenix is 617 miles, and that was the

17   closest I could find.

18           THE COURT:  Does that have a camp?

19           MS. FRITZ:  It does have a camp.

20           THE COURT:  Okay.

21           Mr. Herman?

22           MS. FRITZ:  Thank you, your Honor.  There are a number

23   of things that I agree with Ms. Fritz about, in particular

24   that.

25           THE COURT:  Just keep your voice up for Mr. Mauro's

L67nreys

1   benefit.  Okay?

2                    MS. FRITZ:  Yes, your Honor.  Is that better?

3                    THE COURT:  I think he would find it better.

4                    MR. HERMAN:  Okay.  Thank you, your Honor.

5               Like I said, there are a few things I agree with

6   Ms. Fritz about.  In particular, that this prosecution is not

7   about criminalizing consensual commercial sex transactions, nor

8   is it about a discreet prostitution enterprise that may have

9   participated over a short period of time in New York.

10              This prosecution is a financial crime.  It's about

11  money laundering.  The government has a large interest in

12  ensuring the integrity of the financial system, both here and

13  abroad.

14              In this case the government charged all three types of

15  money laundering:  You have promotional money laundering,

16  concealment money laundering, and international money

17  laundering.

18              Any one of those would be a serious crime that would

19  require an important prosecutorial response, but here you have

20  all three:  You have the creation of bank accounts in which

21  lies were made to banks in order to establish bank accounts

22  through which commercial sex proceeds would flow.  You have the

23  movement of those funds throughout numerous banks accounts; the

24  laundering of those funds through merchant banks, which

25  established credit card transactions that were miscoded as

L67nreys

online advertising.  You have the transfer of those funds both

throughout the United States and from the United States into

Israel, and those transfers were ton in a way to conceal the

proceeds.

As I mentioned, Ms. Reynolds mailed, we believe, an

American Express credit card to Cohen in Israel, and they

communicated e-mail several times about that.  And then Cohen

would withdraw small proceeds over a long period of time,

thousands of times.  And then Ms. Reynolds would pay those back

from the prostitution proceeds in this country.  And that was a

way to send some of the proceeds to Cohen, but in a way to

conceal and frustrate the international financial system.

So that's essentially the conduct.

Now, the one dispute the parties have over the

guidelines, the base level offense is 14.  I think Ms. Fritz

said 13, but I think that she misspoke, it is 14.  Two levels

are added because of money laundering, so really the only

dispute is about the leadership amount.  The government

believes four levels apply; the defense believes two levels

apply.

Here, your Honor, we believe four levels apply for a

variety of reasons.

First, there were more than five participants.  I

think what the defense fails to appreciate is that case law

permits both witting and unwitting participants to be counted,

L67nreys

1   and we cited a number of cases to that effect, including *United*

2   *States v. Kent*, 821 F.3d 362, from the Second Circuit, 2016,

3   which specifically requires a court to consider the number of

4   knowing participants in the criminal activity and the number of

5   unknowing participants whose activities were organized or led

6   by the defendant with specific criminal intent.

7           So here we have both Ms. Reynolds and Mr. Cohen and

8   her sister involved in the criminal conduct as well as the

9   utilization of her boyfriend, the escorts who she personally

10  interviewed and hired and who deposited the commercial sex

11  proceeds in her bank accounts or sent her the credit card

12  information so that the credit card transactions would go

13  through, and then the phone records.  In addition, accountants

14  and others were used to establish the entities.  So, your

15  Honor, we believe there were well over five participants.

16          But you don't even need to rule about the number of

17  participants because the criminal conduct was so extensive.  It

18  occurred over a substantial period of time.

19          This is Ms. Reynolds second go of it.  She first did

20  it in the early to mid 2000s and then rejoined the conspiracy

21  in approximately 2011 or 2012.  It lasted many, many years,

22  eight or nine years, millions of dollars were involved, your

23  Honor, and the underlying activity took place in numerous

24  states, not only New York, but essentially all up and down the

25  east coast.

L67nreys

1      So, your Honor, we believe legally the four-point

2  leadership enhancement applies.  But regardless of which

3  enhancement your Honor determines should apply, the government

4  believes a sentence within the guidelines is appropriate here

5  for many of the same reasons, including the extensive level of

6  criminality, the fact that there were three separate money

7  laundering objects, and the fact that the government's

8  investigation in money laundering of illicit proceeds is very

9  important to secure the fundamental nature of the financial

10  system.

11      With respect to Ms. Reynolds' attempts to cooperate,

12  your Honor read our submission, I won't repeat all of that.  I

13  will just mention that one of the reasons we did not offer her

14  a cooperation agreement was because of the view that her and

15  Cohen had similar levels of culpability.

16      While he established and formed the idea originally,

17  she really ran the business.  Her name is on the bank accounts,

18  not his name.  She's the one sending him what to post on social

19  media.  She is the one who is interviewing the escorts.  She's

20  the one who is opening the bank account.

21      So, ultimately, your Honor, unless your Honor has

22  further questions, I know the submissions were extensive and I

23  won't belabor the point, but those were some of the reasons the

24  decision was made by the government and my supervisors.

25      In short, we submit a guidelines sentence is

L67nreys

appropriate here.

Thank you, your Honor.

MS. FRITZ:  If I may respond briefly.

THE COURT:  Sure.

MS. FRITZ:  It is very important that we just clarify something that Mr. Herman just spoke about.  He was conflating the number of participants with whether conduct was otherwise extensive, and I think we need to now just remember that in order to be a participant and be counted as a participant, for purposes of that counting, one has to be criminally responsible for the conduct.

Now, Mr. Herman referenced a different idea, and that is when you shift over to "or was it otherwise extensive," the courts have permitted consideration of unwitting participants, but those two should not be merged.

That's why I said early on there are only three participants here under the definition of participant in the provision, which is one who is or could be criminally responsible.

The reason why I say that is we have Mr. Cohen, we have Ms. Reynolds.  We don't have to argue about whether her sister was or wasn't criminally responsible.  Let's assume that she would fall into that category.

With respect to Ms. Reynolds' boyfriend, first of all, let's remember when we start trying to say that a deposit to a

L67nreys

1    flower shop account of the boyfriend, when we start looking at

2    that as being what is proof of a significant criminal

3    organization, I think it kind of proves the point, but I don't

4    think in any of the materials there's any basis to find that he

5    is criminally responsible for anything that happened.

6            So I would just emphasize, five or more participants,

7    I think clearly not.  Otherwise extensive, that's where the

8    case law, as Mr. Herman said, permits consideration of others

9    who may not have had knowledge of what was going on.

10           But, again, I would argue that this does not rise to

11   the level of something that is otherwise extensive.  If you

12   look at the language of *Carrozzella*, that's looking for what

13   was the size and scope of the criminal organization.

14           And, last but not least, I did try to find comparable

15   cases because I feel like that's always something that the

16   Court should consider.

17           And I have to be honest.  It was tough.  I found what

18   I consider to be two comparable cases of this kind of escort

19   service being run over significant periods of time, and then

20   another one that is actually cited by the government.  That's

21   the *Hurant* case, where it was also a kind of an escort service,

22   but it had aggravating factors because of the involvement of

23   minors.

24           In that range of cases that I could find and where

25   there are no aggravating factors, it certainly appears that

L67nreys

1    these cases are often not prosecuted, but where there were not,

2    and I found them anyway, I found two where there was no jail

3    imposed.  And I went all the way back to the Sydney Biddle

4    Barrows case to try to identify.

5               There was another case that was an organization that

6    was run by a Zumba dance instructor.  There was no jail

7    imposed.  With respect to Mr. Hurant -- and again there was

8    aggravating conduct there -- he received six months.

9               So I would argue that the government has not put forth

10   anything that would suggest that a term of incarceration could

11   be appropriate or comparable to any other case here.

12              And again, thank you, your Honor.

13              THE COURT:  Ms. Reynolds, this is your opportunity to

14   speak if you wish.

15              THE DEFENDANT:  Yes, your Honor, thank you.

16              Words cannot say or express the deepest remorse I have

17   had and regret for my actions and my involvement.  And I'm

18   truly, truly sorry.

19              I am on a good path now with my life, my work, my job

20   and my music.  I have a wonderful job that I love, and they

21   treat me very well.  I just ask for the Court to allow me to

22   continue that.

23              Thank you.

24              THE COURT:  All right.

25              Before imposing sentence, let me address the

L67nreys

guidelines issue.  Under 3B1.1, I do not rely on the five or more participants aspect of (a).  Rather, my consideration is under the otherwise extensive prong.

It is clear from the commentary, let alone the case law, that it is appropriate to increase the guidelines calculation here by four levels.

First, just looking at the commentary, in determining whether an organization is otherwise extensive, all persons involved during the course of entire offense are to be considered, and that includes the unknowing services of outsiders.

But here there certainly are obvious examples of individuals who we can consider outsiders, and in this cause I certainly am not making any findings one way or the other about -- actually let me say that better.

I am not making a finding that either Ms. Reynolds' sister or her boyfriend or were active participants.  But there are numerous others apart from the women who were providing their services and depositing the proceeds of their activity into the accounts, credit card accounts that Ms. Reynolds had set up.

There are numerous banks who unwittingly opened up accounts that were utilized for this crime.  There is no question that Ms. Reynolds had decision-making authority, was actively involved in planning and organizing the offense, had

L67nreys

1    considerable control.

2              In short, quite frankly, I don't think the legal issue

3    is particularly close.  The four-point enhancement for an

4    aggravating role is warranted.

5              Having said that, let me say that I think that the

6    probation department did an excellent job in analyzing the

7    appropriate factors here, both aggravating and mitigating, and

8    I will adopt their recommendation of a year and a day.

9              I certainly agree that there are no victims in this

10   case, certainly not who have been identified.  And I agree that

11   there is no need for specific deterrence of Ms. Reynolds.

12   Indeed I think it is indisputable that Ms. Reynolds has done

13   everything postarrest that we would want a defendant to do.

14             She has endeavored to cooperate, to rehabilitate

15   herself and to stay off all drugs, but in my role as a judge I

16   cannot ignore the seriousness of the offense involved both in

17   terms of the magnitude, a number exceeding $11 million, and the

18   length of time that Ms. Reynolds was involved, first from 2001

19   to 2006 and then again from 2011 until the fall of 2019.

20             In sentencing, the Court must show respect for the

21   law.  And regardless, Ms. Reynolds knew she was breaking the

22   law.  Her involvement was active and it was uncoerced and she

23   continued to engage in this enterprise even when Mr. Cohen had

24   left the United States to go to Israel.

25             As much as I am troubled -- and I am -- by Mr. Cohen's

L67nreys

1   involving Ms. Reynolds, who was certainly much younger than he,

2   I am troubled by her involving her boyfriend and her sister.

3   And as I said before, I am certainly not making any finding

4   that either was a knowing participant, but regardless of their

5   innocence, it was still wrong to do so.

6           So I impose, as I said, a year and a day; all of the

7   mandatory standard and special conditions of supervised release

8   for a period of two years.

9           There is a forfeiture of $11,445,854.72 as well as the

10  $100 special assessment.

11          I am certainly going to recommend that Ms. Reynolds be

12  confined in a camp for women as close to her home as possible.

13          And she certainly has 30 days to self-surrender.  That

14  might be extended if it takes the Bureau of Prisons a lengthy

15  amount of time to designate her to an appropriate facility.

16          Although I believe it has been waived, let me advise

17  Ms. Reynolds that she has the right to appeal the sentence that

18  I have imposed.

19          Is there anything else I haven't covered?

20          MS. FRITZ:  No, your Honor.

21          THE COURT:  All right.  Then I think we are done.

22  Thank you.

23          (Adjourned)

24

25